Carl J. Mayer
66 Witherspoon Street – Suite 414
Princeton, New Jersey 08542
609-921-0253

Bruce I. Afran
10 Braeburn Drive
Princeton, New Jersey 08540
609-924-2075

Attorneys for Plaintiff

UNITED STATES DISTRCT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------
  CHRISTOPHER HEDGES,

        Plaintiff,                              INDEX NO.:

        v.

BARAK OBAMA, individually and as               COMPLAINT
representative of the UNITED STATES
OF AMERICA;  LEON PANETTA,
individually and in his capacity as the
executive and representative of the
DEPARTMENT OF DEFENSE,

        Defendants.

-----------------------------------------------------

     Plaintiff, by his attorneys CARL J. MAYER and BRUCE I. AFRAN, individually and on behalf of all others similarly situated, as and for their Complaint against defendants assert as follows:

  1. Plaintiff Christopher Hedges is a United States citizen and a journalist who in the course of his ordinary journalistic work from time to time writes about and covers entities, organizations and persons and their associated forces that are engaged in

1

hostilities with the United States or its coalition partners, as described under the Authorization for Use of Military Force (AUMF) (Public Law 107-40).

2. Defendant Barak Obama is the President of the United States and has individual and executive responsibility for carrying out, enforcing and executing the laws of the United States and, in particular, as Commander in Chief with respect to laws governing acts of the military and service branches and the Department of Defense, including but not limited to the AUMF and the Homeland Battlefield Bill of the National Defense Authorization Act (NDAA) of 2012 (the "Homeland Battlefield Bill").

3. Defendant Leon Panetta is the Secretary of Defense and has individual and executive responsibility for carrying out, enforcing and executing laws of the United States respecting the acts and actions of the military and service branches including the AUMF and the Homeland Battlefield Bill and, in particular, the prosecution of purported war crimes and crimes and acts proscribed in wartime, the incarceration of prisoners of war or persons taken into custody as unlawful combatants, along with the supervision of military prisons and detention centers in the United States and abroad.

## JURISDICTION AND VENUE

4. Jurisdiction is based upon a question or controversy arising under the Constitution and laws of the United States pursuant to 28 U.S.C. 1331.

5. Venue is properly within the Southern District of New York in that the United States maintains governmental offices and bases and branches of the military in this district and also maintains in this district civil and military prisons and detention centers along with military and civil prosecutorial offices and staff.

6. Venue is further properly grounded within this jurisdiction in that plaintiff, in connection with his journalistic profession, conducts his work in this district, is a fellow of The Nation Institute in which capacity he performs journalistic activities in this District and travels to and from this district to meet with, interview and report upon "covered persons" under the AUMF and the Homeland Battlefield Bill and departs from this district in connection with travel abroad for such purposes.

## FACTUAL BACKGROUND

7. On December 31, 2011 President Obama signed into law the Homeland Battlefield Bill that will take effect on or by March 3, 2012.

8. The Homeland Battlefield Bill provides for indefinite detention of United States citizens and permanent residents taken into custody in the United States on suspicion of providing substantial and/or direct support for persons or entities engaged in hostilities against the United States. Particularly, section 1031 of the Homeland Battlefield Bill defines a "covered person" subject to indefinite detention in the following manner:

> "(b) Covered Persons- A covered person under this section is any person as follows:
>
>> (1) A person who planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored those responsible for those attacks.
>>
>> (2) A person who was a part of or substantially supported al-Qaeda, the Taliban, or associated forces that are engaged in hostilities against the United States or its coalition partners, including any person who has committed a belligerent act or has directly supported such hostilities in aid of such enemy forces."

Homeland Battlefield Bill, §1031(b).

9. The Homeland Battlefield Bill provides that any person detained under the Act whether detained within or without the United States may be held without trial until the end of hostilities authorized by the Authorization for Use of Military Force (2001). Section 1031(c) states:

> "(c) Disposition Under Law of War- The disposition of a person under the law of war as described in subsection (a) may include the following:
>
> > (1) Detention under the law of war without trial until the end of the hostilities authorized by the Authorization for Use of Military Force.
> >
> > (2) Trial under chapter 47A of title 10, United States Code (as amended by the Military Commissions Act of 2009 (title XVIII of Public Law 111-84)).
> >
> > (3) Transfer for trial by an alternative court or competent tribunal having lawful jurisdiction.
> >
> > (4) Transfer to the custody or control of the person's country of origin, any other foreign country, or any other foreign entity."

Homeland Battlefield Bill, §1031(c).

10. The Act does not define the terms "substantially supported", "directly supported" or "associated forces" as used in section 1031, supra.

11. Section 1032 provides that any persons irrespective of U.S. citizenship or permanent resident status who are taken into custody "in the course of hostilities" authorized under the AUMF shall be held indefinitely until the end of such hostilities:

> "(a) Custody Pending Disposition Under Law of War
>
> > (1) IN GENERAL- Except as provided in paragraph (4), the Armed Forces of the United States shall hold a person described in paragraph (2) who is captured in the course of hostilities authorized by the Authorization for Use of Military Force (Public Law 107-40) in military custody pending disposition under the law of war.

>    (2) COVERED PERSONS- The requirement in paragraph (1) shall apply to any person whose detention is authorized under section 1031 who is determined—
>
>    >    (A) to be a member of, or part of, al-Qaeda or an associated force that acts in coordination with or pursuant to the direction of al-Qaeda; and
>    >
>    >    (B) to have participated in the course of planning or carrying out an attack or attempted attack against the United States or its coalition partners.
>
>    (3) DISPOSITION UNDER LAW OF WAR- For purposes of this subsection, the disposition of a person under the law of war has the meaning given in section 1031(c), except that no transfer otherwise described in paragraph (4) of that section shall be made unless consistent with the requirements of section 1033.

Homeland Battlefield Bill, §1032(a)(1)(2)(3).

12.  Section 1032(b) permits but does not require that U.S. citizens and U.S. Permanent Residents "captured" in the "course of hostilities" be held in military custody; section 1032(b) does not exempt U.S. citizens and U.S. Permanent Residents from the requirement of "indefinite detention" set forth in section 1031, supra:

>    (b) Applicability to United States Citizens and Lawful Resident Aliens-
>
>    >    (1) UNITED STATES CITIZENS- The requirement to detain a person in military custody under this section does not extend to citizens of the United States.
>    >
>    >    (2) LAWFUL RESIDENT ALIENS- The requirement to detain a person in military custody under this section does not extend to a lawful resident alien of the United States on the basis of conduct taking place within the United States, except to the extent permitted by the Constitution of the United States.

Homeland Battlefield Bill, §1032(b)(1)(2).

13.  In his signing statement, President Obama acknowledged the constitutionally questionable nature of the Homeland Battlefield Bill.  The President's signing statement says:

> "I have signed this bill despite having serious reservations with certain provisions that regulate the detention, interrogation, and prosecution of suspected terrorists."

14. Based upon the foregoing, the Home Battlefield Bill provides for the indefinite detention of any person, including but not limited to U.S. citizens and permanent residents, and/or trial of such persons by the military courts for acts that "substantially supported" or "directly supported" any person, entity or organization defined as being in a state of hostilities with the United States under the AUMF whether occurring within or without the United States and irrespective of whether such person is arrested or detained within the United States.

15. This Complaint is not an acknowledgment or admission as a matter of law or fact that Plaintiff is a "covered person" or is otherwise within the scope of the Homeland Battlefield Bill but the Complaint asserts that the Homeland Battlefield Bill is sufficiently broad or overbroad as to cause Plaintiff and similarly situated persons to be in foreseeable jeopardy of being brought within its textual provisions.

16.  Plaintiff Christopher Hedges is a journalist whose profession requires, in part: 1) that he have communication with and personal and direct intercourse with persons who are likely to be deemed engaged in hostilities with the United States under the AUMF and the Homeland Battlefield Bill; 2) that he travel to see and meet with such persons; 3) that he report on the activities and beliefs of such persons; and 4) through his journalistic endeavors to convey their philosophy and belief systems to the public at large.

17.  As a journalist, essayist, author and war correspondent, Plaintiff publishes and conveys the opinions, programs and ideas of "al-Qaeda, the Taliban, or associated forces that are engaged in hostilities against the United States or its coalition partners,…", Homeland Battlefield Bill, §1031(b)(2), such journalistic activity being brought within the scope of the statute's provision defining a "covered person" as one who has "substantially supported" or "directly supported" the acts and activities of such individuals or their organizations, allies or associated forces.  *Id.*

18.  For example, on or about January 31 2011, Plaintiff Hedges wrote on Truthdig.com, a published website, the following essay:

> "The secular Arab regimes from Morocco to Yemen, for all their ties with the West, have not provided freedom, dignity, opportunity or prosperity for their people. They have failed as spectacularly as the secular Palestinian resistance movement led by Yasser Arafat. And Arabs, frustrated and enduring mounting poverty, are ready for something new. Radical Islamist groups such as the Palestinian Hamas, the Shiite Hezbollah in Lebanon and the jihadists fighting in Iraq and Afghanistan are the new heroes, especially for the young who make up most of the Arab world. And many of those who admire these radicals are not observant Muslims. They support the Islamists because they fight back."

Truthdig.com, January 31, 2011.  Plaintiff has and expects to again publish other writings of similar nature.

19. The statutory text in the Homeland Battlefield Bill is sufficiently broad to include Plaintiff's as a "covered person" who, by way of such writings, interviews and/or communications, "substantially supported" or "directly supported" "al-Qaeda, the Taliban, or associated forces that are engaged in hostilities against the United States or its coalition partners,…" under §1031(b)(2) and the AUMF.

20. The Homeland Battlefield Bill is sufficiently broad as to include within its scope Plaintiff's writings and journalistic endeavors that have the effect of conveying, promoting or

disseminating the ideas, philosophy and program of organizations, persons and entities in a state of hostility with the United States since September 11, 2001 or with organizations, persons and entities allied or associated with persons in a state of hostilities as defined under the AUMF and the Homeland Battlefield Bill.

21. Accordingly, Plaintiff as a result of his journalistic endeavor and profession, is in jeopardy of detention under the Homeland Battlefield Bill because he produces material, an example of which is set forth, *supra*, that may be deemed within the scope of "substantially" or "directly" supporting persons, organizations, entities and their associates, allies and colleagues, who are in a state of hostility with the United States under the AUMF as follows:

A. Under the §1031(c)(1) such detention may be indefinite at the discretion of the United States without recourse to a court proceeding until the end of hostilities;

B. Under §1031(c)(2 or (3) plaintiff or any other "covered person" may be tried by military courts or commissions without recourse to the civil courts.

C. Under Section 1031(c) (4) Plaintiff or any other "covered person" may be subject to continued, indefinite "rendition" to any foreign country, jurisdiction or any location at the discretion of the United States without recourse to a court or other proceeding and without notice to any legal representative or other person.

## COUNT I
(FIFTH AMENDMENT DUE PROCESS)
INDEFINITE DETENTION OF U.S. CITIZENS OR OTHER PERSONS DETAINED IN THE U.S. UNDER §1031(C)(1), TRIAL OF U.S. CITIZENS BY COURT MARTIAL OR MILITARY COMMISSION, DENIAL OF ACCESS TO CIVIL JUDICIAL AUTHORITIES UNDER §1031(C)(2) AND (3), RENDITION UNDER §1031(C)(4).

22. The Homeland Battlefield Bill, §1031(C)(1) authorizes the indefinite detention, imprisonment and incarceration of U.S. citizens and other "covered persons" in the United States, including persons such as Plaintiff, without trial or judicial recourse in violation of the U.S. Constitution, Amendment V.

23. §1031(C)(2) authorizes trial of civilian U.S. Citizens, permanent residents or other "covered persons" arrested or detained in the U.S., including persons such as Plaintiff, by court martial or military commission in violation of the U.S. Constitution, Amendment V.

24. §1031(C)(3) authorizes trial of civilian U.S. Citizens, permanent residents or other "covered persons" arrested or detained in the U.S., including persons such as Plaintiff, by military commission in violation of the U.S. Constitution, Amendment V.

25. §1031(C)(4) authorizes rendition without judicial recourse of any "covered person" person arrested or detained in the United States, including U.S. citizens and persons such as Plaintiff, by, "[t]ransfer to the custody or control of the person's country of origin, any other foreign country, or any other foreign entity," in violation of the U.S. Constitution, Amendment V.

WHEREFORE, the Homeland Battlefield Bill,§1031 violates the due process provisions of the Fifth Amendment to the United States Constitution and Plaintiff respectfully requests judgment declaring §1031 to be void as unconstitutional and permanently enjoining its enforcement, along with attorney's fees and cost of suit.

## COUNT II
### (FIFTH AMENDMENT DUE PROCESS)
### RENDITION OF "COVERED PERSONS"
### TO ANY JURISDICTION UNDER §1031(C)(4)

26. The Homeland Battlefield Bill authorizes the permanent indefinite removal from the United States via rendition or other means to any place, country, location or jurisdiction of any "covered persons", including but not limited to U.S. citizens and persons such as Plaintiff, arrested or detained in the United States.

WHEREFORE, §1031(c)(4) of the Homeland Battlefield Bill is unconstitutional in that it violates the due process provisions of the Fifth Amendment to the United States Constitution and the judicial recourse provisions of Article III of the United States Constitution and Plaintiff respectfully requests judgment declaring §1031(c)(4) to be void and permanently enjoining its enforcement, along with attorney's fees and cost of suit.

## COUNT III
### (FIFTH AMENDMENT DUE PROCESS)
### ABSENCE OF ADEQUATE STATUTORY NOTICE

27. The Homeland Battlefield Bill is unconstitutional in that imposes incarceration, detention, rendition and/or military prosecution without adequate notice of the nature and substance of the charge that a "covered person" has "substantially supported" or "directly supported" the activities of any person, organization, entity or their allies or associates who are in a state of hostility with the U.S. under the AUMF.

28. In particular, the Homeland Battlefield Bill, §1031 fails to give adequate statutory notice of its material terms including the terms "covered person", "covered persons", "substantially supported", "directly supported" or "associated forces".

29. As a result of the absence of proper notice and statutory definitions of said material terms plaintiff and others similarly situated do not have adequate notice of the acts and matters that will render them "covered persons" under §1031 and subject to indefinite detention without trial, made subject to military trial or to rendition outside the United States.

30. Accordingly, the Homeland Battlefield Bill, §1031 authorizes the arrest and indefinite detention of U.S. citizens and other persons without adequately defining or giving notice as to "covered persons" or the acts that render a person one who "substantially supported" or "directly supported" the described entities including "al-Qaeda, the Taliban, or associated forces that are engaged in hostilities against the United States".

WHEREFORE, §1031 of the Homeland Battlefield Bill is unconstitutional in that it fails to provide adequate statutory notice of the nature and substance of the acts for which a "covered person" shall be subject to arrest, detention and other treatment under the statute and Plaintiff respectfully requests judgment declaring §1031 to be void and permanently enjoining its enforcement, along with attorney's fees and cost of suit.

### COUNT IV
(MILITARY JURISDICTION TO BE IMPOSED UPON CIVILIANS ARRESTED WITHIN THE UNITED STATES AS "COVERED PERSONS" UNDER §1031)

31. Under §1031 persons arrested as "covered persons" within the United States may be made subject to the military jurisdiction and the military courts in violation of the United States Constitution that provides for civilian access to a civil court system for all crimes and offenses within the United States.

WHEREFORE, §1031(c)(2) and (3) of the Homeland Battlefield Bill are unconstitutional in that they impose military jurisdiction upon civilians in violation of the U.S. Constitution and particularly Article III and Amendment V of the United States

Constitution and Plaintiff respectfully requests judgment declaring §1031(c)(2) and (3) to be void and permanently enjoining their enforcement, along with attorney's fees and cost of suit.

**COUNT V**
(FIRST AMENDMENT)
EXPRESSIVE AND JOURNALISTIC ACTIVITIES

32. The Homeland Battlefield Bill, §1031 is unconstitutional in that it imposes indefinite incarceration without trial or judicial recourses for expressive conduct such as that of Plaintiff in his work as a journalist and chills and burdens the freedom of speech, press, expression and association guaranteed by the First Amendment to the United States Constitution.

33. Such interference with protected expressive and associative rights arises by rendering persons who promote, publicize or endorse the views, ideas, philosophy and program of persons defined as being engaged in hostilities with the United States under the AUMF or the Homeland Battlefield Bill subject to indefinite detention without trial in the United States, made subject to trial by military courts or military commission, or made subject to rendition to any jurisdiction at the sole discretion of the United States without recourse to any civil court.

34. In his profession as a journalist Plaintiff must travel from time to time to theatres of combat and other locations where persons engaged in hostilities with the United States reside and conduct their business.

35. In his profession as a journalist Plaintiff must interview, report upon and promote and publicize the views and opinions of persons engaged in a state of hostility with the U.S. as described in §1031 and §1032.

36. Plaintiff and others similarly situated will be chilled and burdened in the exercise of his First Amendment rights because of the continued threat of incarceration and other treatment under §1031 and §1032 that arises in connection with his work as a journalist, as described above.

37. In the alternative, §1031 is unconstitutionally overbroad in that it renders subject to incarceration and other treatment persons who "substantially supported" the persons and entities described in the statute or in the AUMF, conduct that embraces a wide range of protected expressive and associative rights under the First Amendment.

WHEREFORE, §1031 of the Homeland Battlefield Bill is unconstitutional in that chills, burdens and intrudes upon protected rights of expression under the United States Constitution, Amendment I, or, in the alternative, is unconstitutionally overbroad, and Plaintiff respectfully requests judgment declaring §1031 to be void and permanently enjoining its enforcement, along with attorney's fees and cost of suit.

REQUEST FOR RELIEF

WHEREFORE, Plaintiff on his own behalf and for all others similarly situated respectfully requests judgment as follows:

1. Declaring the Homeland Battlefield Bill, §1031 and §1032 to be void as unconstitutional;

2. Permanent injunctive relief barring its enforcement, along with attorney's fees and cost of suit

3. Such other relief as to the Court may seem just and proper.

    Respectfully,

    S/Carl J. Mayer
    Carl J. Mayer, Esq.
    THE MAYER LAW GROUP
    66 Witherspoon Street – Suite 414
    Princeton, New Jersey 08542
    609-921-0253


    S/Bruce I. Afran
    Bruce I. Afran, Esq.
    10 Braeburn Drive
    Princeton, New Jersey 08540
    609-924-2075

    Attorneys for Plaintiff

Dated:  New York, New York
        January 12, 2012