DavWhedC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CHRISTOPHER HEDGES, et al.,

4                   Plaintiffs,

5            v.                            12 CV 331 (KBF)

6
    BARAK OBAMA, et al.,
7
                    Defendants.
8
    ------------------------------x
9                                          New York, N.Y.
                                           October 31, 2013
10                                         12:00 p.m.

11  Before:

12                    HON. KATHERINE B. FORREST,

13                                         District Judge

14
                              APPEARANCES
15
    CARL J. MAYER
16  BRUCE I. AFRAN
         Attorneys for Plaintiffs
17
    U.S. Department of Justice
18  United States Attorney's Office
    Southern District of New York
19  BY:  BENJAMIN H. TORRANCE
         CHRISTOPHER B. HARWOOD
20

21

22

23

24

25

DavWhedC

```
 1              (Case called)
 2              THE COURT:  Good afternoon.  Please be seated.
 3              MR. MAYER:  My name is Carl Mayer, your Honor.  I have
 4    a pinched nerve, which sometimes makes sitting difficult.
 5    Could I stand part of the time.
 6              THE COURT:  That's fine.
 7              MR. MAYER:  Thank you.  I could say it demonstrates
 8    unusual deference to the federal judiciary, but that would be
 9    too obsequious even for practicing lawyer standards.
10              THE COURT:  Whatever is comfortable.
11              MR. AFRAN:  Good afternoon, your Honor.  Bruce Afran,
12    for the plaintiffs.
13              MR. TORRANCE:  For the government, your Honor,
14    Benjamin Torrance.  Good afternoon.
15              MR. HARWOOD:  Chris Harwood, for the government as
16    well.
17              THE COURT:  We are here after the mandate has now
18    issued from the Second Circuit and given this Court fact
19    jurisdiction over this case.  The Second Circuit, as you all
20    know, has significantly narrowed this case, and there's a
21    question as to whether there's really anything left to do but
22    dismiss the case, the court having found essentially that 1021
23    doesn't apply and can't apply to American citizens, which is
24    something that we never actually argued here, but that's the
25    Second Circuit's holding, and that it can apply to noncitizens
```

DavWhedC

1    who are both not lawful residents as well as noncitizens and/or

2    also apprehended abroad.  That's the Second Circuit's view as

3    to quite a narrow scope of 1021.

4            Based upon that and based upon its findings with

5    respect to Wargalla and Jonsdottir, I'm not sure there's really

6    anything left, but let me hear from you folks as to what your

7    view is.

8            Mr. Afran.

9            MR. AFRAN:  Thank you, your Honor.  We don't think

10   that the case is narrowed to the point where it should be

11   dismissed at this stage.

12           I'll start just with the Jonsdottir and Wargalla.  The

13   court did say on this record they don't show standing and the

14   court was addressing the permanent injunction at that stage and

15   the evidence that came through there.  And the court was

16   concerned that noncitizens are subject to the law and that

17   could be applicability of it to noncitizens.  I'm not sure I

18   read it as saying that the case is precluded from going forward

19   in discovery, but rather that as to Jonsdottir and Wargalla, on

20   the record presented on the injunction, would not have standing

21   to gain injunctive relief.

22           With respect to other defendants, and I don't know

23   whether we would really pursue that at this point,

24   Dr. Ellsberg, Dr. Chomsky and Ms. Bolen never testified, and so

25   the record the court construed was only as to those

DavWhedC

```
1    defendants -- plaintiffs who did testify.  I think your Honor
2    was very careful to note during the hearings that your rulings
3    would only address evidence and issues coming through those
4    defendants who testified in the preliminary injunction stage.
5    At least in theory, the case is ripe still with regard to those
6    plaintiffs who have not offered any testimony at this point.
7              THE COURT:  Before we go to the defendants, let me
8    just ask you about that.  I read the Second Circuit's decision
9    as stating fairly clearly and definitively that, in the Second
10   Circuit's view, 1021 simply couldn't apply to American
11   citizens.
12             MR. AFRAN:  Let me address that.  I was about to go to
13   the third point.  What they say actually at page 52, "it,"
14   meaning 1021, "applies only to individuals who are not
15   citizens, are not lawful resident aliens, and are apprehended
16   outside the United States."
17             At the last page of the decision, page 60, they state,
18   "Hedges and O'Brien," and that reference is to the U.S. citizen
19   plaintiffs who testified, "do not have Article III standing to
20   challenge the statute because Section 1021 says nothing about
21   the government's authority to detain citizens."  The way we
22   read this is twofold.  One, they're rejecting standing to
23   challenge the constitutionality of the statute, but they're
24   clearly making a finding or a statement of law in any event
25   that the statute cannot apply to U.S. citizens or to permanent
```

DavWhedC

1    residents lawfully residing in the U.S.

2         Our position is that this leaves open the scope for

3    this Court to enter, upon appropriate motion, declaratory

4    relief construing the statute and declaring its applicability

5    as opposed to a declaration of unconstitutionality, because the

6    Court of Appeals was only concerned, in our view, with denying

7    standing to challenge the validity of the law.  But they

8    clearly go out of their way to say the law cannot apply to the

9    U.S. citizen plaintiffs.

10        THE COURT:  I see.  Your argument, Mr. Afran, is the

11   Second Circuit's holding is really a holding as to standing and

12   there is still room left for declaratory judgment as to the

13   scope of the statute somehow apart from standing.

14        MR. AFRAN:  Apart from unconstitutionality of the

15   statute.

16        THE COURT:  You'd have to have somebody who had

17   standing to pursue that, to take it any further.

18        MR. AFRAN:  I think the court is saying there's no

19   standing here to declare the statute facially invalid, and

20   that's really what they say at page 60 in their final

21   conclusion.  But if they're going out of their way to say at

22   the same time the statute cannot apply to U.S. citizens or does

23   not apply to U.S. citizens and they also acknowledge, though

24   its language doesn't address that point, it seems to me that

25   there is standing to say that there's a justiciable controversy

DavWhedC

```
 1   as to whether the broad language of the statute or its
 2   undefined language can apply to American citizens, and that's
 3   apart from the declaration that it's illegal.
 4           THE COURT:  Who would have, in your view, the standing
 5   to pursue that declaration?  Would it be Jonsdottir and
 6   Wargalla?
 7           MR. AFRAN:  They're not American citizens, so they
 8   wouldn't fall into that category.  That would be irrelevant
 9   from their point of view since they're neither citizens nor
10   permanent residents.  But any U.S. citizen plaintiff or
11   permanent resident, I think they're all citizens as opposed to
12   permanent residents.
13           MR. MAYER:  Bolen.
14           MR. AFRAN:  And Bolen did not yet testify.  She's a
15   citizen.  Dr. Ellsberg, Dr. Chomsky and Hedges and O'Brien are
16   U.S. citizens, so they would have standing, we believe, to seek
17   a declaration that the statute does not apply to U.S. citizens
18   because that is still an issue that by the language of the
19   statute, rather, its absence of language, does arise.
20           THE COURT:  Under the declaratory judgment act, to
21   seek a declaration, there has to be an actual controversy
22   between the litigants.  And I guess the question is, approached
23   from even the angle which you're suggesting which I'm trying to
24   get my head around, whether or not there is such a controversy
25   at this point on this complaint because the complaint, as
```

drafted, and the Second Circuit's opinion and everything that's

occurred in this litigation up to this point, is really based

towards something else, which appears to be resolved as to

American citizens by the Second Circuit.

MR. AFRAN:  What's interesting is there's no order

stating that it does not apply to American citizens.  They're

simply stating in *dictum*, essentially, it does not apply in its

scope to American citizens.

THE COURT:  I thought it was quite clever.

MR. MAYER:  And it's also in contradiction to the

executive pronunciations of the President that it does apply to

citizens, the President won't use it, and to Congress who

subsequently tried to amend the statute to make it clear.

THE COURT:  Right.  But we all know that no matter

what any other evidence could be brought to bear in terms of

the American citizens, I can't go against what the Second

Circuit has said.  They are controlling authority on me, and

whether another district court someplace else decides something

differently, that's for another day, another time, another

person.  The question is what do we think is left on this

complaint and as to whom.

I hear what you're saying, Mr. Afran, in terms of the

American citizens and I'll hear from Mr. Harwood and

Mr. Torrance in just a moment, but tell me a little bit about

your view, the two of you, Mr. Mayer and Mr. Afran, about

DavWhedC

```
1   Wargalla and Jonsdottir.  Is there anything left as to them?
2   Based upon what the Second Circuit's indicated they would have
3   to have, I would think, for standing, is there anything that
4   could remotely begin to establish that, or is it effectively
5   DOA as to them?
6            MR. MAYER:  I think it might be appropriate to have
7   some limited discovery on the question of to what extent these
8   people might be targeted.  It's not outside the realm of
9   possibility that there is some targeting of these particular
10  plaintiffs.  We don't have any evidence to that effect at this
11  moment other than what we put in the complaint.  But I would
12  say given the recent revelations of targeting of many different
13  individuals by the intelligence agencies, I think maybe some
14  limited discovery on that point would be appropriate.
15           THE COURT:  We know that we can't just have a
16  complaint for a fishing expedition.  Your burden, as
17  plaintiffs, is to show an actual case or controversy that opens
18  the door to discovery, particularly the kind of discovery which
19  you're talking about which undoubtedly would bring into play,
20  if there are any such investigations, lots of issues of
21  national security and things of that nature.
22           Let me just comment that the various types of
23  monitorings that I think you referenced really are quite
24  different from targeting in the sense of targeting an
25  individual for military detention or possibly substantially
```

DavWhedC

1   supporting al-Qaeda and the Taliban.  They could be the same,

2   but they could be really quite different than just gathering of

3   information.

4          Let me hear, if I could, and then we'll go back and

5   forth, from Mr. Torrance and Mr. Harwood as to their view as to

6   what's left and what should be done with this case and then

7   we'll iterate.

8          MR. AFRAN:  Your Honor, may I just note, you did ask a

9   question about whether there is a case or controversy with the

10  U.S. citizen plaintiffs.  After I rise again, I'll address

11  that.

12         THE COURT:  Thank you.

13         MR. TORRANCE:  Thank you, your Honor.  Benjamin

14  Torrance, for the government.

15         There is nothing left in this case.  Your Honor's

16  characterization as a clear and definitive rejection of

17  standing by any United States citizen is correct.  That is

18  exactly what the Second Circuit said at page 40 of the slip

19  opinion.  It took them all of one paragraph to categorically

20  dismiss any idea that there is any injury to any U.S. citizen

21  from the statute.  Regardless of whether Dr. Chomsky or all the

22  other U.S. citizen plaintiffs have testified, they are out of

23  this case.  There is nothing left to them.

24         As to the noncitizens, they have offered what they

25  purport to be their injury for constitutional standing purposes

DavWhedC

1    in the complaint.  They offered, both of them, no remaining

2    noncitizen plaintiffs.  They have offered their view of their

3    threat and their view of what injury they may have suffered in

4    their testimony before this Court.  The Second Circuit has

5    considered that and found it to fall short, so there's nothing

6    left as to them either.

7            Mr. Mayer's proposition that we engage in discovery is

8    not proper.  That would essentially serve as an attempt to

9    substantiate the speculation as to what kind of threat may or

10   may not be present as to them.  If they cannot allege it, if

11   they cannot show it in their testimony, then their complaint

12   fails for lack of standing.

13           Under the Second Circuit's holding, there is nothing

14   left in this case, and we ask the Court to dismiss it.

15           THE COURT:  Thank you, Mr. Torrance.  I can't say that

16   I'm surprised.

17           MR. TORRANCE:  I tried not to surprise.  Thank you.

18           THE COURT:  Mr. Afran, I told you I would let you

19   address what you think might be a case or controversy that

20   could be left as to American citizens because you've got to

21   have a case or controversy even to get towards a declaratory

22   judgment to establish standing, etc., etc.

23           MR. AFRAN:  The interesting thing is that your Honor

24   made the reference to a sort of clever approach, which is

25   something the Court can say, but we shouldn't say, about the

DavWhedC

1    Court of Appeals.

2           THE COURT:  I say that only because they did something

3    that nobody here ever argued, which is that the statute can't

4    apply to any American citizen.

5           MR. AFRAN:  Oh, I see.

6           THE COURT:  I thought that was quite interesting and

7    something that had never been raised before, but I'm happy to

8    have it said by the Second Circuit.

9           MR. AFRAN:  It's a new fact, essentially.  Not a fact,

10   but it's a new aspect of this case that didn't exist before;

11   namely, that the court is now opining, it's somewhat in *dictum*,

12   but it is laced through the opinion that the statute's language

13   does not apply to U.S. citizens or permanent residents.  If I

14   say U.S. citizens, the Court should assume I include permanent

15   residents as well.  And that is something that was not really

16   argued here because the plaintiffs look at the statute and say

17   its broad language contains no such exceptions for the many

18   reasons we've argued here before.  And the government, for its

19   part, refused to make a declaration or declaratory statement in

20   this court that it does not apply to American citizens or U.S.

21   citizens or permanent residents, so the language or currency

22   among all of us at the trial level was that there is an issue

23   here as to how and when it could apply to American citizens.

24   The government's position was as to these plaintiffs, their

25   activities, we don't think, are within the statute anyway, but

DavWhedC

1    the government refused to say that the statute cannot be used

2    as to U.S. citizens and persons in the U.S., and so the Court

3    of Appeals has now stated in its understanding the statute does

4    not allow such application.

5         THE COURT:  Let me put it differently.  It has, and

6    this is important, interpreted the statute as not applying to

7    American citizens, which is why I don't know that any American

8    citizen could establish standing, which leads us to Ellsberg

9    and Chomsky and the other individuals that you have mentioned

10   who are citizens.

11        MR. AFRAN:  I only referenced them because they didn't

12   testify.  In theory, they could have evinced evidence that they

13   are subject to a greater degree of threat than those who did

14   testify.

15        THE COURT:  I think the Second Circuit would have said

16   it wouldn't even matter what degree of threat they felt because

17   they could not have been detained under 1021.

18        MR. AFRAN:  They said that.  They say an American

19   citizen cannot be, and we took the position that Congress would

20   have no power to do that for reasons under Milligan and Hamdi

21   and other series of decisions where the military cannot have

22   such custody.  Now, the Court is saying the statute does not

23   allow for that or does not do that.  But the court's opinion is

24   not an order that has any binding effect on the government.  It

25   is at best persuasive authority to be used potentially in some

DavWhedC

```
1    other case, and so the way in which the statute by order gets

2    interpreted really has to be through the trial court, and we

3    believe that the Court of Appeals is stating that the statute

4    cannot be applied to U.S. citizens as a point of interpretive

5    law, but it does not yet have a binding impact on the United

6    States.  And there is a case in controversy because, firstly,

7    the statute, by its language, and the Court of Appeals

8    acknowledges this, does not exempt U.S. citizens, and the court

9    says it has its broad language.

10            The government has stated we're not going to agree

11   here that this statute does not apply to U.S. citizens.  We're

12   not going to agree that the President has no such power under

13   the statute, and so there is still a case in controversy

14   because we have U.S. citizens who engage in behavior that is

15   arguably, in some cases, close to the line, so to speak, in

16   terms of what one would see as giving substantial support to

17   these types of groups and ideologues, and we have the

18   government in this very court saying we will not go so far as

19   to agree that this will not be enforced against U.S. citizens.

20   So we have a case in controversy because we still have people

21   who say we have activities that are not precluded by the

22   language of the statute and the government says we will not

23   exempt U.S. citizens.

24            Now that we have a rule of law from the Court of

25   Appeals saying that's true, U.S. citizens can't be included, I
```

1    think we're entitled to declaratory relief as to the scope of

2    the statute's enforcement capacity and reach.

3          THE COURT:  Let me ask Mr. Torrance what he thinks

4    about that particular argument.  And let me just repeat it, not

5    because you didn't hear it, but because I want to make sure

6    that I got at least a sufficient version of it in my mind that

7    I'm meeting what Mr. Afran is saying.

8          Mr. Afran is saying that the Second Circuit has made

9    statements that the statute doesn't apply, or doesn't appear to

10   apply, to American citizens but acknowledges that the statute

11   on its face doesn't so state, and so the Second Circuit has

12   held that there could be no interpretation of the statute; the

13   Second Circuit has held that American citizens cannot be

14   detained pursuant to the statute, but that that is all in the

15   context of a standing decision and not in the context of an

16   order that is putting forth a declaration as to the scope of

17   the legislation itself and that the case or controversy which

18   continues to exist is whether or not the scope of the statute

19   is as the Second Circuit has stated, and if it is, they're

20   entitled to an order so stating.

21         Did I get it anywhere clear?

22         MR. AFRAN:  I think that's absolutely clear.

23         THE COURT:  Mr. Torrance.

24         MR. TORRANCE:  I would say that that formulation is as

25   Mr. Afran said and I think it contradicts itself, but to say

DavWhedC

1    that we have a case or controversy as to whether the Second

2    Circuit correctly stated the law is in and of itself

3    self-contradictory because the Second Circuit makes the law in

4    this circuit.  Unless and until the *en banc* court or the

5    Supreme Court reverses it, that opinion is the law in this

6    circuit.  There's no need for a separate order.  I'm not aware

7    of any procedure in which a circuit by issuing any binding

8    decision followed by its judgment, followed by its mandate,

9    which serves effectively as an order and under this court's

10   local rules intends to be automatically adopted as orders of

11   the district court that that ends the case, but putting that

12   aside, the point is that that makes it law in the circuit, and

13   there's no need for any more.

14        Your Honor is quite correct to say we need standing in

15   order for any kind of action, declaratory judgment or

16   otherwise.  To say that there's something still out there that

17   could be addressed on the declaratory judgment or to say that

18   the Second Circuit's opinion only addressed standing is

19   irrelevant.  Yes, it only addressed standing, but Mr. Afran

20   said it's *dictum*.  It's absolutely not *dictum*.  The

21   construction of the statute is crucial to the reasoning by

22   which the Second Circuit says there is no standing

23   categorically for U.S. citizens, that they absolutely needed

24   that.

25        THE COURT:  Could I ask you a question.

DavWhedC

1          MR. TORRANCE:  Please.

2          THE COURT:  And I know I did this to you a lot during

3     the trial.

4          MR. TORRANCE:  It's my job.

5          THE COURT:  Based upon what you just said, isn't it

6     the case that, in the context of dismissing, if the Court were

7     to dismiss Jonsdottir or Wargalla, it could do so in its

8     opinion which said that the government acknowledged that the

9     law in the Second Circuit is that 1021 does not apply to U.S.

10    citizens?

11         MR. TORRANCE:  We certainly acknowledge that the

12    Second Circuit held that, yes.  I'm not quite sure what the

13    utility is of simply repeating.  I mean, there should be no

14    controversy that the government acknowledges that the Court of

15    Appeals for the Second Circuit makes law in the Second Circuit.

16         THE COURT:  I think the issue is a difference between

17    having an order which says definitively the Second Circuit has

18    held that this does not apply to U.S. citizens or calling it

19    *dictum*, that the Second Circuit has held that X plaintiffs

20    don't have standing, which is the holding, versus the *dictum*

21    that part of the basis for that is their interpretation that it

22    can't apply to U.S. citizens.  You may find that to be a

23    distinction without real substance, but I think that that's

24    partly the point.

25         MR. TORRANCE:  I would not say it's a distinction

DavWhedC

1    without real substance.  I would say it's a false distinction.

2    It's not *dictum*.  Any reasoning on which the Court of Appeals

3    relies in order to reach its holding becomes the law in the

4    circuit.  So they clearly relied on their construction of

5    Section 1021 in order to reach their holding that U.S. citizens

6    have no standing to challenge this statute.

7                I do want to say, as an aside, that Mr. Afran talking

8    about how the face of the statute doesn't clearly say anything

9    about U.S. citizens is incorrect.  What the Second Circuit said

10   is that 1021(b) does not say anything about U.S. citizens, but

11   1021(e) does.  So the statute, the section of the statute,

12   taken as a whole, quite clearly does say something about U.S.

13   citizens, and the Second Circuit's interpretation of that is

14   binding on this Court and on parties within this court unless

15   and until it's reversed.

16               I think this is all a little bit academic.  The point

17   is that the Second Circuit's decision binds everybody in this

18   room, and that compels dismissal.

19               MR. MAYER:  If I may, your Honor.  May I just respond

20   to one point and make another.

21               The first is that in referencing section (e) as being

22   somehow distinction from section (b), it's very clear from the

23   statute that all of the sections operate together.  In other

24   words, (b) sets out categories of people who might be covered

25   or activities that might be covered and then (c), which

DavWhedC

1    operates together with (b) and with (e), indicates what the

2    military could do if it sought to bring in those individuals.

3    It could put them before a military tribunal.  It could hold

4    them indefinitely.  And the particular provision I want to

5    focus on, which I think relates to the declaratory judgment, is

6    section (c) I believe (3), which allows the military to send

7    anyone, and it doesn't limit it to citizens or noncitizens, to

8    a foreign power or to any foreign entity, like a foreign secret

9    service, so I don't think the exercise is academic.

10         The question is, and this is why I think a declaratory

11   judgment would be appropriate, if a U.S. citizen was taken by

12   the military and sent to a foreign country, there is a

13   possibility that one would never know of the whereabouts of

14   that person and how would that person ever have standing in a

15   court in the United States.  How would they ever exercise their

16   habeas rights?

17         I had a bit of this colloquy with Judge Lohier in the

18   Second Circuit argument.  It really wasn't in the opinion.  I

19   think you touched upon it lightly in your opinion, but it's

20   that provision that makes this worrisome.  It's sort of an area

21   that I've never seen before.  You could have the authority to

22   take people, including U.S. citizens, render them to a foreign

23   country, and how would that person ever have standing.  And how

24   would you ever challenge that provision?

25         THE COURT:  I hear you, but it strikes me that the

DavWhedC

1    Second Circuit has a very extensive and thorough opinion on

2    this case and review of what we all did here in terms of the

3    trial record that we presented to them and then on my

4    rationale, and we can't relitigate that which they have

5    decided.  They have decided that (c) does not apply to American

6    citizens.

7            Let's talk for a minute about Jonsdottir and Wargalla

8    because I think there are two separate issues here.  One is is

9    there any way of you folks arguing effectively -- and I don't

10   mean that in terms of advocacy; I mean that in terms of a

11   matter of law -- that there's anything left for the American

12   citizens piece, because I have to say that I am more with

13   Mr. Torrance on this than not, but I am listening closely

14   because I had not considered what I would call the thin end of

15   the wedge that Mr. Afran is posing.  But separate and apart

16   from that, I see Jonsdottir and Wargalla on this record,

17   putting aside discovery about what some agency of the U.S.

18   Government may be doing, as insufficient to withstand

19   additional scrutiny and that what I am supposed to do is

20   dismiss as to them.

21           MR. AFRAN:  May we have one moment, your Honor.

22           THE COURT:  Yes.

23           MR. AFRAN:  Your Honor, I don't think that as to

24   Jonsdottir and Wargalla we're aware of any other additional

25   evidence at this point.  Now, it's conceivable that,

DavWhedC

 1    particularly as to Wargalla, in the year or so since she

 2    testified, there may be things she's done or things she's come

 3    in contact with that would enhance her position.  For example,

 4    if you recall, she was associated with a group that was listed

 5    on the London Metropolitan Police terrorist watch list.  It's

 6    conceivable that her activities have continued.  To be honest,

 7    we have not been in touch over the last few months, so we can't

 8    say at this stage if that has happened.

 9         Based on what we know at this point, we are not aware

10    of any other evidence.  None has come to our attention.

11         THE COURT:  Let me suggest that we do the following.

12    I think that based on the current record and the current

13    complaint and the way it's currently structured, given the

14    Second Circuit's ruling, I would need to dismiss it.

15         MR. AFRAN:  Is your Honor referring to the entire

16    complaint or Jonsdottir and Wargalla at this point?

17         THE COURT:  The entire complaint.  However, if you

18    believe there is a way of articulating additional evidence or

19    something else that would keep it alive, what I will allow the

20    plaintiffs to do is to take 30 days, 45 days, tell me what you

21    need, to consider whether or not you want to try to, I'm not

22    going to say it's going to automatically be accepted and you've

23    got the battle of the opinion that you've got, but if you want

24    to articulate it in some way so we have a clear target to shoot

25    at, then we would do that in the context of a Rule 15 motion.

DavWhedC

1    It would be an amended complaint with a Rule 15 motion to have

2    it accepted, and then the government would probably oppose it

3    on the basis of futility, almost no matter what, unless there's

4    something extraordinary about Jonsdottir and Wargalla that

5    comes to light in your further investigation, or some other

6    plaintiff.  But I think that might be the way to proceed so

7    that we've got your best position clearly articulated.  The

8    government can then meet it and then either the Second Circuit

9    disposes of it entirely and it's a relatively straightforward

10    order of dismissal, or not.

11          MR. AFRAN:  I think, your Honor, if it wouldn't burden

12    the Court's schedule, or the government for that matter, we

13    might prefer 90 days, and the reason for that is we have a cert

14    petition due on the 16th of December, and it may well be that

15    we'll have a reply brief at some point in that time period as

16    well to consider.  So, frankly, our efforts on this litigation

17    over the next four to five weeks are going to be focused on

18    that.  If we could do 90 days, that might make more sense from

19    our point of view.

20          THE COURT:  That's fine with me because right now it

21    is sort of sleeping on my docket.

22          MR. AFRAN:  Okay.

23          THE COURT:  Obviously, if you end up with cert, then

24    that puts it into a different position altogether.  Are you

25    talking about cert in this case?

DavWhedC

1              MR. AFRAN:  Yes, from the Second Circuit's opinion

2        because it was injunctive, we have the right even though they

3        remanded it.

4              THE COURT:  And even though I've gotten the mandate

5        back.

6              MR. AFRAN:  I think we still have that capacity.

7              THE COURT:  Let's put out 90 days.  At the end of

8        January, why don't we say January 30, and if you're a few days

9        over that, let me know in advance so I know you're not just

10       forgetting about it.

11             MR. AFRAN:  That will actually give us time in terms

12       of dealing with any reply brief on the cert as well.  We'll

13       still get a window.

14             THE COURT:  Then I would suggest you can make what I

15       would expect to be a very short motion to amend.

16             We can do it either way, Mr. Harwood, Mr. Torrance.

17       We can do it as you're opposing on the basis of futility and

18       you can raise your arguments there, or you can take in the

19       complaint and say that you're going to reserve all rights and

20       move against it as 12(b)(6).  But given the kinds of arguments

21       that people are making, this may be a Rule 15 motion more than

22       anything else.  But I leave that for you folks to decide, and

23       that would be done in relatively short order after this.

24       January 30, and then you folks decide how you want to brief it

25       after that.

DavWhedC

1          MR. AFRAN:  So essentially we report to the Court by

2     the 30th.

3          THE COURT:  You give me a proposed amended complaint,

4     if you think there are facts.

5          MR. AFRAN:  We're not going out of our way.  It's just

6     if our investigation allows for that.

7          THE COURT:  If your investigation allows for that.

8     And if it doesn't allow for that, then I'll do what I think,

9     having considered the various positions people have put forward

10    today as appropriate, either for a plan for the future or

11    dismissal based upon the Second Circuit's order.

12         MR. AFRAN:  Your Honor, could I address one other

13    issue.

14         THE COURT:  Yes.

15         MR. AFRAN:  With respect to the thin end of the wedge,

16    one thing that I think needs to be, I think, recognized is that

17    what the Second Circuit was considering was only your Honor's

18    ruling with respect to facial invalidity.  And they were not

19    addressing at all the question of the scope of application or

20    even an as-applied challenge.

21         THE COURT:  They said they never had to get to any of

22    that because there wasn't standing.  Their view was they didn't

23    have to get to any of the substance of the actual

24    constitutional challenges since there was insufficient basis

25    for standing.

DavWhedC

```
 1              MR. AFRAN:  I would agree with that.  However, in
 2    stating the law does not apply to U.S. citizens and permanent
 3    residents in the U.S., I think firstly, they are raising an
 4    issue for consideration at this level.  I don't think they
 5    would have put it in that context and remanded it were it not
 6    in the court's mind that this is something that needs to be
 7    considered.  And in view of the fact that it was never raised
 8    by either side here, it creates a new climactic or climatic
 9    aspect of the law governing this set of cases, and so we think
10    that the standing question is really focused on the
11    constitutionality.  But one does have standing, if the
12    government -- let me lay it out very quickly without rehashing
13    too much.
14              If the government is still of a posture that it will
15    not say from its point of view that 1021 does not apply to U.S.
16    citizens, then I think we still have a case in controversy with
17    respect to the true application of the statute.
18              THE COURT:  Do you think you have that in the Second
19    Circuit?  I mean, maybe you have that in the Third Circuit or
20    the First Circuit or the Fourth Circuit.  But this is precisely
21    the point.  I don't know that you have it in the Second Circuit
22    because the government is as any other litigant, and if the
23    government attempted to come in here tomorrow against a
24    challenge, say that somebody who was American was detained and
25    you, Mr. Afran and Mr. Mayer, represented them in some action
```

DavWhedC

1    and you moved to dismiss, I don't know how I would get

2    jurisdiction over this, if there's a habeas petition or

3    something like that.

4              MR. AFRAN:  There would have to be.

5              THE COURT:  And somehow it ended up here and not in

6    D.C.

7              MR. AFRAN:  Wherever the brig is.

8              THE COURT:  I would think that this district would

9    have to dismiss based on the Second Circuit's precedent.

10             MR. AFRAN:  I think it would, without question.  But

11   that does not foreclose a pre-enforcement action if the

12   government is still not stating that it will not apply the

13   statute to U.S. citizens.  And so I think that the *dictum* in

14   that case, and it is *dictum* because the holding was not that.

15   The holding was no standing because of no fear of imminent

16   enforcement, but if the *dictum* within that is that this is

17   doesn't apply to U.S. citizens and we still have a situation in

18   which the government refuses to disavow the applicability of

19   the statute, as your Honor pointed out earlier in the

20   litigation, there is a national jurisdiction on certain

21   questions.  And just because in the Second Circuit there is a

22   ruling that says in this circuit one can't be detained under

23   this if they're a U.S. citizen, not a ruling, but *dictum*, that

24   does not mean that U.S. citizens who are in other jurisdictions

25   in this case -- and they are, Noam Chomsky is in the First

DavWhedC

1  Circuit, Dan Ellsberg is in California, Jennifer Bolen is in

2  Washington -- it does not mean that they do not have the right

3  to say, Wait a moment, in the Second Circuit, that may be

4  applicable, but I live in Seattle, I live in the First Circuit,

5  I live in California, but I'm a plaintiff in this case.  If

6  that *dictum* is binding circuit in the Second Circuit

7  ultimately, then this Court does have the authority to say as

8  to these other plaintiffs there's applicability on a national

9  basis.

10           THE COURT:  Maybe you want me to transfer it to

11  Boston.

12           MR. AFRAN:  No.  I don't think that's necessary.  I

13  think the Court made the point earlier that although normally

14  your jurisdiction would be within the Southern District, there

15  are cases in which this Court has reached beyond, and that's

16  why you issued the injunction you did.  The Court of Appeals

17  never criticized that aspect of this Court's decision.

18           THE COURT:  I hear all of what you're saying.  I think

19  that it suggests that the motion you may want to put on top of

20  any amended complaint or nonamended complaint may be lengthier

21  than I was suggesting.  It may not be the short, two-page

22  motion to amend.  Then we'll give time to the government to

23  respond and we'll just proceed as appropriate.  January 30, put

24  something in.  That will set the stage for our next steps.  And

25  that's where we go.  In the meantime, it sounds like you folks

DavWhedC

1   have got the various activities going on in, with this case

2   elsewhere, and so you'll be proceeding with those.

3          MR. AFRAN:  We will.

4          THE COURT:  January 30.

5          MR. AFRAN:  And our deadline there, Justice Ginsberg

6   extended that to the 16th of December.

7          THE COURT:  If you're not going to make the 30th for

8   any reason or there is any other reason for extensions and the

9   January 30 is not going to work, let me know so we don't think

10  that you're just forgetting about us.

11         MR. AFRAN:  Your Honor, your law clerk advised any

12  communications like that should go through ECF.  Is that the

13  procedure we should follow?

14         THE COURT:  Yes.  You're welcome to write letters,

15  copied to everyone.  They can now be filed on ECF in the

16  Southern District.  They didn't used to be able to filed on

17  ECF, but they now can be, which is a wonderful thing, so

18  everything is permanently available.  Go ahead and file if you

19  need an extension of time.  Or if you want to notify the Court

20  of a development, you can do that by letter.

21         MR. AFRAN:  Thank you for the adjournment.  It helped

22  out in that other matter.

23         THE COURT:  Anything further, Mr. Torrance?

24         MR. TORRANCE:  No.  Thank you, your Honor.

25         THE COURT:  Thank you.  We are adjourned.